IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| RICKY S. TARPLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:16-cv-00021 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BROOKDALE SENIOR LIVINGS, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

This matter is before the Court on Defendant Brookdale Senior Livings's ("Brookdale") Motion to Compel Arbitration and to Dismiss Ricky S. Tarpley's ("Plaintiff") action. Brookdale and Plaintiff have fully briefed the matter, and I have reviewed the relevant filings and counsel's arguments. For the reasons stated herein, I will compel arbitration and stay the action.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Seemingly under Title I of the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e thru 2000e-17, Plaintiff filed this action against Brookdale for refusing to hire him. (See generally Compl., May 5, 2016 [ECF No. 2].) He attributes Brookdale's hiring decision to discrimination on the basis of his disability, sex, and race. (Id. at pgs. 4, 7–8.) By way of § 4 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), Brookdale moved to compel arbitration. It also moved for the action's dismissal,[2] in its view, a consequence of compelled arbitration.

---

[1] At this stage, the facts are recited in the light most favorable to Plaintiff, and reasonable inferences are drawn in his favor. Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 n.3 (4th Cir. 2016); Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

[2] Although Brookdale also moved to dismiss for insufficient service of process, it later waived service. [ECF No. 41.] At the hearing, Brookdale made clear that it was withdrawing this ground for dismissal.

On April 30, 2015, Plaintiff completed his final application for employment as a part-time cook at Brookdale.[3] (See id. at pg. 7; Mot. to Dismiss & Mot. to Compel Arbitration ex. 1, at pg. 2, June 7, 2016 [ECF No. 9-2] (hereinafter "Pl.'s S. & A.").) As part of his application, Plaintiff completed a page titled, "Applicant's Statement & Acknowledgement," in which he initialed various matters. (Pl.'s S. & A. at pg. 2.) By signing and dating at the bottom of the page, Plaintiff further "certifie[d]" his "agree[ment] to be bound by the terms and conditions stated in this application, which contain[ed] all the understandings between [Brookdale] and [Plaintiff] concerning the topics addressed [t]herein." (Id.) There is no dispute that Plaintiff completed the job application, seemingly in Danville. (Cf. Compl. at pgs. 1, 7.)

On the "Applicant's Statement & Acknowledgement," Plaintiff initialed, inter alia, a four-sentence paragraph dealing with arbitration ("the Arbitration Agreement"). The first sentence acknowledged an agreement to arbitrate: "I understand that by signing this application, I agree that in the event a dispute should arise with regard to whether or not I am hired, or if hired, a dispute should arise between my employer and me, that I agree to arbitrate the dispute by a final binding arbitration." (Pl.'s S. & A. at pg. 2.) The second and third sentences acknowledged possible costs and payment: "*The cost of the arbitration shall be paid for by the employer to the extent the costs are awarded by the arbitrator, and therefore, I may have to pay some of the costs. I agree to paying the portion the arbitrator requires.*" (Id.) Finally, the fourth sentence acknowledged the Arbitration Policy's application and receipt: "The arbitration to which I am party to is governed by the employer's policy with regard to binding arbitration, and the employer has provided me with a copy of that policy." (Id.; cf. Mem. in Opp'n to Def.

---

[3] According to Plaintiff, he had earlier applied for the same position, but the kitchen manager informed him that he "should not have put that [he] was dis-able [sic] on the application. Because they don't hire dis-able [sic] people." (Compl. at pg. 7.) The kitchen manager advised Plaintiff "to come back in and fill out [a] new application." (Id.)

2

Brookdale's Mot. to Dismiss & Mot. to Compel Arbitration ex. 2, July 8, 2016, [ECF No. 34-2] (hereinafter "the Arbitration Policy").[4])

Plaintiff has since declared, "I have never received the 'employer's policy with regard to binding arbitration' referenced in Brookdale's employment application. I never received an employment handbook for Brookdale." (Tarpley Decl. ¶ 3, July 8, 2016 [ECF No. 34-1].) At the hearing on this matter, Brookdale's counsel conceded that it lacked evidence to rebut this declaration and that there is a dispute whether Plaintiff received the Arbitration Policy.[5]

## II. STANDARD OF REVIEW

Addressing a motion to compel arbitration under the FAA, a court applies a standard that "is akin to the burden on summary judgment." Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 85 n.3 (4th Cir. 2016) (quoting Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 553, 564 (4th Cir. 2015)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995), cited with approval in Chorley Enters., Inc., 807 F.3d at 564. "Where a party 'show[s] genuine issues of material fact regarding the existence of an agreement to arbitrate,' . . . that party is entitled to a jury trial on the issue." Galloway, 819 F.3d at 91 (alteration in original) (quoting Chorley Enters., Inc., 807 F.3d at 564).

## III. DISCUSSION

Arbitration occurs where "disputants empower[] a third party to render a decision settling their dispute." See Wilbert, Inc. v. Homan, No. 3:13-CV-30-RJC-DSC, 2013 WL 6238286, at *3

---

[4] Brookdale's rebuttal argument left unclear whether it had an arbitration policy in addition to the one generally stated in the Arbitration Policy [ECF No. 34-2]; however, the Record is silent on the matter.

[5] For that matter, Brookdale did not argue that the pertinent acknowledgment bound Plaintiff.

3

(W.D.N.C. Dec. 3, 2013) (quoting Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc., 390 F.3d 684, 689 (10th Cir. 2004)). It is a "fundamental principle that arbitration is a matter of contract," Lorenzo v. Prime Commc'ns, L.P., 806 F.3d 777, 781 (4th Cir. 2015) (quoting AT & T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)), while the FAA "governs the rights and responsibilities of the parties to an arbitration agreement," C.B. Fleet Co. v. Aspen Ins. UK Ltd., 743 F. Supp. 2d 575, 581 (W.D. Va. 2010).

"Congress enacted the FAA in 1925 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" Dillon v. BMO Harris Bank, N.A., 787 F.3d 707, 712 (4th Cir. 2015) (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). Before the FAA, it was well established

> that the performance of a written agreement to arbitrate would not be enforced in equity, and that if an action at law were brought on the contract containing the agreement to arbitrate, such agreement could not be pleaded in bar of the action; nor would such an agreement be ground for a stay of proceedings until arbitration was had. Further, the agreement was subject to revocation by either of the parties at any time before the award.

S. Rep. No. 68-536, at 2 (1924); see also Red Cross Line v. Atl. Fruit Co., 264 U.S. 109, 120–21 (1924). In response, § 2 of the FAA made arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and § 3 and § 4 "provide[d] . . . parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, and an affirmative order to engage in arbitration," respectively. Dillon, 787 F.3d at 713 (citations and internal quotation marks omitted). Through these and other provisions, "[t]he FAA manifests an 'emphatic federal policy in favor of arbitral dispute resolution,' and requires that courts

4

'rigorously enforce agreements to arbitrate.'" Id. at 712 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 631 (1985), and Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).

"In determining whether the parties executed a valid agreement to arbitrate, courts generally apply ordinary state-law principles that govern the formation of contracts," Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001), here, Virginia law, see Bizmark, Inc. v. Air Prods., Inc., 427 F. Supp. 2d 680, 688 (W.D. Va. 2006).[6] The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000).

The Arbitration Agreement's plain language clearly encompasses Plaintiff's cause of action,[7] but Plaintiff argues the former's invalidity or unenforceability on several grounds: lack of agreement for Brookdale's failure to provide the Arbitration Policy, lack of mutuality for only Plaintiff's obligation to arbitrate, lack of consideration for Plaintiff's completion of a mere job application, and unconscionability for Plaintiff's lack of meaningful choice in cost splitting.[8]

A. The Arbitration Policy

Plaintiff argues that, because Brookdale provided him no copy of the Arbitration Policy (Tarpley Decl. ¶ 3), he formed no arbitration agreement. He contends that he could not have known the terms of arbitration without having been provided the Arbitration Policy.

---

[6] Uncovering limited Virginia authority on the more discreet issues herein, I rely on persuasive authorities where appropriate.

[7] Plaintiff argues that the Arbitration Agreement is inapplicable because the Arbitration Policy excluded claims for injunctive or other equitable relief. He seems to rely on language excluding from coverage "[a] claim *by Brookdale* for injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information." (The Arbitration Policy at pg. 3 (emphasis added).) This exclusion clearly does not apply to Plaintiff's claim.

[8] Plaintiff also speculates that the Arbitration Policy might have other provisions revealing the Arbitration Agreement's invalidity; however, there is no such indication in the Record.

5

Several principles conjoin to undermine Plaintiff's contention here. "[T]he failure to specify the applicable body of arbitration procedures to be used does not render the contract unenforceable as patently ambiguous." McNeil v. Haley S., Inc., No. 3:10CV192, 2010 WL 3670547, at *5, *6 (E.D. Va. Sept. 13, 2010). In other words, those procedures are not necessary to forming a complete and definite agreement to arbitrate. In light of this principle, the parties' conceded dispute whether Plaintiff received the Arbitration Policy, see supra pg. 3, bears, at most, on a separate question whether the Arbitration Policy will govern the arbitral proceeding.[9] Such a question of "what *kind of arbitration proceeding* the parties agreed to" is "for the arbitrator, not the courts, to decide." See Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003) (opinion of Breyer, J.).

B. Consideration/Mutuality

On the assertion that the Arbitration Agreement did not require Brookdale to arbitrate, Plaintiff argues a lack of mutuality in the parties' obligations. He also contends that there was no consideration in his completion of the job application.

> Mutuality of contract as now commonly understood should properly be taken to be sufficiently complied with when there are promises on each side that something shall be done for the benefit of the other side furnishing therefor *considerations* by each party, although they may relate to different terms of the contract and may be conditioned upon performance by the other party.

C. G. Blake Co. v. W. R. Smith & Son, Ltd., 133 S.E. 685, 688 (Va. 1926) (emphasis added).[10] As pertains here, "courts have held that a mutual promise to arbitrate itself constitutes sufficient

---

[9] To be clear, I take no view whether any failure to provide the Arbitration Policy undermined Plaintiff's acknowledgment that it would govern arbitration.

[10] "[I]f, as other courts have said, mutuality of obligation means that a contract must be binding on both parties . . . , the statement that mutuality of obligation is essential to every contract is too broad." C. G. Blake Co., 133 S.E. at 688 (quoting 6 R.C.L., Contracts § 93, at 686 (1915)). "[I]f the requirement of consideration is met, there is no requirement of mutuality of obligation." Jones v. Holloway, 73 Va. Cir.

consideration for an arbitration agreement." McNeil, 2010 WL 3670547, at *6; Louis v. Geneva Enters., Inc., 128 F. Supp. 2d 912, 915 (E.D. Va. 2000). This consideration suffices even if the agreement is part of an application for employment. See, e.g., Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002); Johnson v. Circuit City Stores, 148 F.3d 373, 378 (4th Cir. 1998).

Plaintiff and Brookdale agreed to arbitrate hiring disputes, regardless of who raised them. Upon Brookdale's proffer, Plaintiff agreed "that in the event a dispute should arise with regard to whether or not [Plaintiff] [was] hired . . . that [Plaintiff] agree[d] to arbitrate the dispute by a final binding arbitration." (Pl.'s S. & A. at pg. 2.) Although Plaintiff used the first person to agree to arbitrate, Brookdale's proffer of that agreement "clearly implie[d]" that it, too, agreed to arbitrate.[11] See O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273 (4th Cir. 1997).[12] These promises to arbitrate sufficed as consideration for the Arbitration Agreement, which suffers no mutuality-of-obligation problem.

---

46, 48 (Northampton Cnty. 2007); see also Turner & Happersett v. Hall & Connor, 104 S.E. 861, 863 (Va. 1920). See generally Restatement (Second) of Contracts § 79 & cmt. f (1981).

[11] It is unnecessary to my decision, but I note that the Arbitration Policy confirms this reading: "As consideration for and in exchange for your agreement, Brookdale likewise agrees to use arbitration as the exclusive forum for resolving employment disputes covered by this Procedure. Neither you nor Brookdale will be entitled to a bench or jury trial on any claim covered by arbitration." (The Arbitration Policy at pg. 2.)

[12] Addressing an arbitration agreement drafted by the employer but from the employee's perspective, in O'Neil the Fourth Circuit considered the employer's proffer of the arbitration agreement to "clearly impl[y] that both the employer and the employee would be bound by the arbitration process." 115 F.3d at 274; see also id. at 273 (quoting the agreement).

Plaintiff relies on Noohi v. Toll Brothers, Inc., where the Fourth Circuit found the seller's consideration lacking given "all the subject and verb pairings relat[ing] to the buyer's obligations," the procedures imposed only upon the buyer, the buyer's arbitrable claims being the only examples given, and language that "only the buyer, but not the seller, waive[d] the right to a court proceeding 'FOR ANY CLAIMS *OR COUNTERCLAIMS* BROUGHT PURSUANT TO [THE] AGREEMENT.'" 708 F.3d 599, 610–11 (4th Cir. 2013) (citation omitted). The Fourth Circuit read this latter provision to clarify that "[court] claims could be brought by Seller (which would be a necessary prerequisite to Buyer's assertion of a counterclaim) but that even in such an event, and even though Seller may bring the claim in court, Buyer may not assert any counterclaim in that forum." Id. at 611 (alteration in original) (citation omitted). There is no such provision in the Arbitration Agreement here, and Noohi is further distinguishable because it is silent on any possible implication from one party's proffer of an agreement to the other.

C. Unconscionability

Plaintiff argues that the Arbitration Agreement's cost arrangement is unconscionable.

"'[A]n inequitable and unconscionable bargain has been defined to be "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." The inequality must be so gross as to shock the conscience.'" Mgmt. Enters., Inc. v. Thorncroft Co., 416 S.E.2d 229, 231 (Va. 1992) (quoting Smyth-Bros.-McCleary-McClellan Co. v. Beresford, 104 S.E. 371, 382 (Va. 1920)). "The party asserting unconscionability of a contract has the burden of proving that the contract is unconscionable by clear and convincing evidence." Fransmart, LLC v. Freshii Dev., LLC, 768 F. Supp. 2d 851, 871 (E.D. Va. 2011); Sims v. Sims, 685 S.E.2d 869, 873 (Va. Ct. App. 2009). Roughly translated into the present scenario, "the party seeking to avoid arbitration must prove that 'arbitration would be prohibitively expensive.'" Sydnor, 252 F.3d at 306 (quoting Randolph, 531 U.S. at 91). Importantly,

> [t]he cost of arbitration . . . cannot be measured in a vacuum or premised upon a claimant's abstract contention that arbitration costs are "too high." Rather, an appropriate case-by-case inquiry must focus upon a claimant's expected or actual arbitration costs and his ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs.

Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 n.5 (4th Cir. 2001).

Plaintiff and Brookdale agreed, in short, to pay the cost of arbitration to the extent determined by the arbitrator, and they will presumably incur arbitration expenses in the meantime. Nothing in the Record shows arbitration's expected cost, how the arrangement shocks

8

the conscience, why no sensible man would agree to it, or why no fair man would accept it.[13] I cannot find unconscionability on this Record.

   D. Dismissal

Brookdale seeks the action's dismissal, given that arbitration will be compelled. Although "courts within the Fourth Circuit have noted that, when all the issues presented in a lawsuit are arbitrable, dismissal may be the proper remedy," Elsisy v. Pep Boys-Manny, Moe & Jack, No. 1:08CV67, 2008 WL 5262720, at *5 (M.D.N.C. Dec. 17, 2008) (abstaining from this approach), this approach is unpersuasive.[14]

The Federal Rules of Civil Procedure, "to the extent applicable, govern proceedings under" the FAA "relating to arbitration," "except as [the FAA] provide[s] other procedures." Fed. R. Civ. P. 81(a)(6)(B). The Rules provide no motion to dismiss for arbitrability,[15] and such a defense's existence depends most directly on the law of arbitration agreements' enforcement.

Nothing in the FAA's text establishes arbitrability as a defense to an action. Rather, the text anticipates the following:

---

[13] Plaintiff proceeds in forma pauperis. [ECF No. 3.] However, I have not been advised whether his poverty reveals the Arbitration Agreement to be unconscionable, and the Record does not, at this stage, clarify the applicable arbitral procedures or costs. Cf. Switzer v. Credit Acceptance Corp., No. CIV.A. 5:08CV00071, 2008 WL 5047796, at *2 (W.D. Va. Nov. 25, 2008).

[14] I do not overlook the Fourth Circuit's statement that, "[n]otwithstanding the terms of § 3 . . . dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc. ("Choice Hotels"), 252 F.3d 707, 709–10 (4th Cir. 2001). But cf. Noohi, 708 F.3d at 605 n.2 (noting possible tension in the precedents' language). Judge Cacheris has aptly observed that these words were "dicta. In Choice Hotels, the Fourth Circuit found that at least one of the claims was not arbitrable, and thus dismissal was not a proper remedy. Thus, the language . . . was extraneous to the Fourth Circuit's judgment in Choice Hotels." Blount v. Northrup Grumman Info. Tech. Overseas, Inc., No. 1:14CV919 JCC/TCB, 2014 WL 5149704, at *5 (E.D. Va. Oct. 14, 2014) (citing 252 F.3d at 712); see also Elsisy, 2008 WL 5262720, at *5 ("In [Choice Hotels], the proceedings at issue were actually stayed, not dismissed.").

[15] To be sure, an action before a U.S. district court may satisfy the requirements of subject-matter jurisdiction, personal jurisdiction, venue, process, service of process, statement of a claim, and joinder of parties, cf. Fed. R. Civ. P. 12(b); yet, the underlying cause may be the subject of an arbitration agreement.

9

- the court compels arbitration, 9 U.S.C. § 4, and stays the action, id. § 3;
- the court may appoint the arbitrator, id. § 5, and require witness' attendance at, or punish their absence from, the arbitral proceeding, id. § 7; and
- the court may confirm, vacate, modify, or correct the arbitral award, see generally id. §§ 9–13.

That scheme does not consist with a dismissal premised merely on the cause of action's arbitrability.

Moreover, "[i]t is a canon of statutory construction that a statute is not to be construed as making any innovation upon the common law which is not expressed, or which its words do not clearly require." United States v. Breeding, 207 F. 645, 649 (W.D. Va. 1913). Sections 2, 3, and 4 of the FAA clearly reversed common-law rules, see supra pg. 4, but nothing in the FAA reversed the rule that arbitrability was generally not a defense to an action.[16]

In conjunction with the compelled arbitration under § 4, a § 3 stay is the appropriate relief here. I construe Brookdale's Motion as requesting as much.[17]

### IV. CONCLUSION

The Arbitration Agreement covers the gist of Plaintiff's action, and Plaintiff has not shown the former to be invalid or unenforceable. Accordingly, I will compel arbitration and stay this action pending arbitration.

---

[16] Riding circuit, Justice Story observed that, "where an agreement to refer to arbitration has been set up as a defence to a suit at law, as well as in equity," "[t]he courts have refused to allow [it] as a bar or defence against the suit." Tobey v. Cnty. of Bristol, 23 F. Cas. 1313, 1320 (C.C.D. Mass. 1845) (No. 14,065). For that matter, Brookdale has invoked no recognized exception to this general rule.

[17] The Fourth Circuit has "held that a motion to dismiss is an appropriate vehicle to 'invoke the full spectrum of remedies under the FAA, including a stay under § 3.'" Dillon, 787 F.3d at 714 (quoting Choice Hotels, 252 F.3d at 710).

10

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 30th day of August, 2016.

                                                s/Jackson L. Kiser
                                                SENIOR UNITED STATES DISTRICT JUDGE